The 4th District Appeals Court in the State of Illinois is now convened with General Thomas M. Harris presiding. Thank you. Please be seated. Good afternoon. This is case number 4-22-0281, City of East Peoria v. Charles Melton, Et. Al. Counsel, could you please state your name for the record? For the panel of the City of East Peoria, it is an honor to be employed in the law firm Trace. Thank you. For the appellee? Jennifer Bosco here for Charles Melton. My client is also here today. All right. Thank you, Counsel. This afternoon, Justice Bridges is the third member of the panel. Justice Bridges is participating via Zoom. He'll be able to ask questions during the course of argument and be able to hear your argument. Mr. McCoy, are you ready to proceed? I am, Your Honor. You may. Thank you. May it please the Court of Counsel. This is an administrative review case challenging the decision of the East Peoria Fire Pension Board where it found that Charles Melton had an occupational disease pension. It was entitled to an occupational disease pension for having a stroke. It was implicitly found that he suffered a stroke as a result of his service as a firefighter. I respectfully suggest that if Mr. Melton is entitled to a pension here, any firefighter receives it, suffers a stroke, as unfortunate as that may be, is entitled to an occupational disease pension where there is so little to no evidence in the record that this stroke was a result of his services as a firefighter or any of his duties. There was not testimony taken as to Mr. Melton's duties other than a brief few sentences where he said he had some educational duties, he responded to some polls that he had informational duties, but there was nothing in that testimony suggesting that he had any extra hazards that make him more likely to have a stroke because of his work. Counsel, I apologize. Let me ask you this question because to me a plain reading of the statute that we have here says that a firefighter is entitled to an occupational disease pension if he has a stroke and it adds resulting from his service as a firefighter. Your position here seems to be, well, he was obese, he had a history of high cholesterol, hypertension, sleep apnea, and that none of these issues resulted from his service as a firefighter. However, there is no evidence in this record to support your position that the stroke was not related to his service as a firefighter. So how would you argue that? How do you explain that away when the statute seems so clear? Your Honor, thank you for that question. Our position is we cannot prove the negative that this was not the result of his service, but that the burden is on the firefighter and under that section 4-1110.1, there has to be an occupational stroke or other disease resulting from the service as a firefighter and that has been interpreted by the Linda Mulder case that we cited, Linda Mulder v. Board of Trustees of the Naperville Firefighters Pension Fund as still putting the burden on the firefighter to show that the occupational disease, whether it's a stroke or one of the other enumerated diseases, is a result of his service as a firefighter. It's the firefighter's burden. I think Mr. Melton wants to, in his briefing, suggest that the burden is on the city or the pension board to disprove that it's not a result of his service as a firefighter, prove the negative, which is impossible. Three doctors who examined his records here, Dr. I think it was Williamson Link, said that essentially the firefighter's duties and their exposure, he said you can't rule it out. He said you cannot rule, I mean his last name is Link, but he said you can't rule out this link that stroke isn't a result of services or duty as a firefighter. Did he not? He said so, his words were that the, I've got it here, one cannot discount the cumulative effects. Yes, exactly. One cannot discount the cumulative effects. I think that that is not the same as saying that's the cause. I'm saying that is the same that we cannot rule it out, we cannot prove the negative, but that is not proof that that is a causation. He also did not have any evidence or job description of those cumulative causes that was unique to Mr. Melton. So what I'm suggesting is if you say you cannot rule it out, that's all that's required, you cannot rule it out and the burden is to prove the negative, then basically in every case that a firefighter has a stroke they automatically get. Well clearly that's not what is called for, the city proving a negative. There is a burden of proof and it's on the claimant. So you don't have to establish that the burden isn't on the city here, pretty clear on that. Tell us though, what is the quantum of evidence necessary for the claimant to bring forth in order to establish causation? Your Honor, I think it's a very small quantum. What do you mean? I think it should have to show by preponderance of the evidence that this is resolved from the services of the firefighter and there are some cases where it is suggested as well that if there are disabilities, an exasperated condition, but this is an occupational disease, I think it's binary, it has to result from the service of a firefighter. Occupational disease rather than a duty related disability. I'll ask opposing counsel this as well, but it's your suggestion here, because I didn't see it in the briefs, that the proof necessary to carry the day on causation is a preponderance of the evidence? It does not say that, but I would suggest it would be a proper. And does that have to come from medical testimony or is the board able to consider medical records and reach that determination itself without any medical opinion testimony? I think it would be very difficult. I'm not saying we're ruling out the possibility, but I think it would be very difficult just to be on lay testimony to reach the conclusion that something like a stroke resulted from services of the firefighter. There may be other occupational diseases that may be easier to make the causal connection where it would not require specific knowledge, medical knowledge. So it's your position that there needed to be medical testimony, specifically establishing causation, that the stroke was duty related in order for Clinton to recover his pension. In this situation, yes. I don't think a white person can make that causal connection. But I think that this is not the difficult case where we have maybe a firefighter who testified as to a large amount of stress from his work or specific duties that may have gone beyond anything. We just don't have anything from the firefighter. So you have actually uniform opinions between the three experts that the anticoagulation therapy resulted in a disability. That constituted a disability. Now, the question then is did the stroke contribute to Mr. Melton's need for the anticoagulation therapy, or was that already something that he was taking independent of the stroke? Is that right? He was taking anticoagulants or had a need for anticoagulants independent of the stroke. It is his testimony that it became mandatory after his stroke. I suspect it suggests that the stroke showed that it was mandatory all along, that he should be taking anticoagulants all along, and that there was a lifelong need for anticoagulants, and that was a hereditary reason for the need for anticoagulants, and that hereditary need for anticoagulants predates the stroke. So we get to the other issue of he effectively should not have been working before the stroke. Counsel, let me ask you this, because it is clear from the record that he was taking the anticoagulation medication prior to the stroke, but couldn't that have been related to the kidney cancer that was in fact found to be related to his job? Well, Your Honor, it's possible that it was related to kidney cancer, but I would disagree that it was found that the kidney cancer was related to his job or that there was evidence of that. What they relied on there is another issue, as they said that the city entered into a settlement agreement with the workers' comp, and the testimony of Mr. Melton was that the city agreed that this kidney cancer or renal cancer was job-related, but the settlement agreement, which should not have been referred to anyway because it's a settlement agreement under Rule 408, which has been applied to administrative proceedings, it should not have been applied. But in that settlement agreement, the city never confessed that the renal cancer was job-related. And I understand that, but as Justice Harris asked you, the board had all of this evidence before them when they decided to call this an occupational disease. Did they not? Yes, they did. And this is evidence that they could in fact consider in reaching their decision in this case. Do you agree with that as well? Yes, I do. What I guess my area of disagreement with the board is that they do not have descriptions of what Mr. Melton's duties actually were. They do not have any descriptions or evidence as to why he has, other than his hereditary or pre-existing conditions, why he is firefighting and maybe more susceptible or likely to get a stroke. They relied on false testimony. It may be mistaken. It may be too harsh. But mistaken testimony that the city admits that the renal cancer was job-related where the city made no such admission. And beyond all that, Mr. Melton was already disabled because it's unquestioned that he should not have been working when he was on anticoagulants. The only reason that the stroke was disabling is the NAPA standards that say if you have a stroke, you should not work for one year. There was no evidence that the stroke was continuing to cause problems for Mr. Melton in his ability to perform his duties. It's just the standards say if you get a stroke, don't work for one year. And he was close to retirement age. So they said, oh, you're disabled. What happened? But if you're going to use those standards, they say if you're on anticoagulants, you should not be working. And he was on anticoagulants before the stroke. So that was a disabling event. That was a disabling event, I think, as a matter of law. And therefore, even if they could somehow draw the line, and I don't think they can, if there's evidence that the stroke was a result of his service as a firefighter, well, he was already disabled, and therefore the occupational disease was not the disabling event. And interestingly, that's what the pension board actually found. They voted at the end of the hearing that the need for anticoagulants was the disabling event. And then there was a written decision prepared. And the records that we do have in minutes of that hearing were that the decision was adopted. It doesn't show that they actually read that written decision. It suggests instead that their counsel told the pension board that the decision was in accordance with their vote, which was not true. Their vote was it was the anticoagulants that was the disabling event. And those anticoagulant needs was a hereditary fact, not a result of his service as a firefighter. Counsel, I'd like to change the context of this discussion to go to an argument I understand you've made regarding the failure of the board to have three physicians personally examine Mr. Melton. And do I understand your argument correctly that you interpret Section 4-12 to require that there be three physicians personally examine the defendant or the petitioner or the injured party here as opposed to to have the order of the board that said, it's what they said, pursuant to Section 4-12 of the Illinois Pension Code, the pension board selected three physicians to conduct an independent medical examination of applicants. These medical examinations were conducted by review of the applicant's medical records, not them personally. You argue on appeal that that's a violation of the statute and everything else being considered, that sufficient grounds to reverse by itself? Yes, I am arguing that. I think that the statute has plain language meaning that examination of the firefighter means examination of the firefighter, examination of the firefighter's records. My only question about that first procedurally is you argue that on appeal to this court. At what point was it presented to the lower court or to the board as an argument against their action? It was presented to the lower court in arguments that we basically had oral arguments on this. We briefed this like an appeal with this administrative review after we had the record. It was not argued to the pension board where the pension board, admittedly the mayor asked late in the game to intervene and it was not through this council then. It was just the mayor asking that the city be allowed to intervene in the pension board proceedings. As a first instance, should you be required to file a petition to reconsider if you believe, to the board saying, by the way board, it's a matter of law. You've made a mistake here. You can't rely upon written review of records to comply with section 4-112. I think that there's some problems with that process because we're then under a time limit to seek administrative review, which is a statutory time limit, you know, 30 days from the administrative decision, written decision, and there's no process allowing, that I'm aware of, for seeking a petition for reconsider or rehearing within the pension board. Well, in particular, I guess I will ask Ms. Bonesteel this. I just want to make sure there's not any procedural bar, like a forfeiture issue. For instance, you didn't raise an issue before a trial court that you're now trying to raise on appeal. The board came up with its decision in which they clearly said that examination of medical records, the board's judgment complied with section 4-112. They identified a statute then. You then argued to the trial court, which didn't find that persuasive, but I want to make sure there was no procedural bar to your argument that in the case of the trial court in this court, the absence of a motion to reconsider. I think it would be the wrong case to apply such a forfeiture or procedural bar because this is an unusual case where the mayor asked to intervene and the pension board did not actually grant or deny that motion to infrindate, and then it proceeded to write to the issue as written decision. A written decision, as I mentioned before, conflicted with what it had found at the hearing. Then we had the clock ticking to go to the trial court, and we raised that in the trial court, that very issue. What did the trial court say about the section 4-112 issue? The trial court's decision wasn't much of a decision, to be honest. He did not give much of an explanation for the reasoning, but there was arguments that this is done all the time by the pension board, which I suggest is one more reason why the city should be able to raise this issue and why it's an important issue to get settled. As a matter of fact, is there any case law on the point in either the pension board or any other statute talking about the physical or medical examination of a person that suggests the review of medical records was the equivalent or an acceptable way to go? I cannot find case law on that issue. I'm just going by the plain reading of the statute as I read it. I know plain reading may be different in the court's eyes, but that's my plain reading of the statute. And I do suggest that some of these issues like the lack of evidence as to what Mr. Milton actually did and how that might have impacted him might have benefited from an in-person discussion. There's no question that he had a stroke, but that kind of exchange with the physician... Well, actually, I'm glad you mentioned that because if I understand you correctly and the argument you made to us, the argument about the statute is irrespective of any otherwise merits that he might have. Namely, the board can't award a disability pension under these circumstances. It shall not award. It shall not award unless he's been examined, and you say personally examined, by three physicians. Yes. Okay. As a physician, following up on Justice Steigman's point about what needs to be done at the board level or trial court level, is there an obligation when testimony is taken for the opponent to object? Otherwise, face the possibility of forfeiture of an issue? I think that there is. Then we get into the issue, though, that it's not raised by the pension board. Excuse me, go to the issue of what? I think that there typically is an obligation to raise objections at an administrative hearing, but here we were not really given a chance to participate after the request to intervene was made, and the pension board has not raised the forfeiture issue itself, so it itself is a forfeited issue here. When were you given permission to intervene? We were not given. We were not ruled upon that. The mayor requested permission to intervene, and the pension board neither denied or allowed it, but they did allow us to proceed, and when we filed this final administrative review complaint, they did not seek dismissal based on the fact that we had not been given permission to intervene, but they did seek dismissal of the head of the pension board, which I named just to make sure that we had jurisdiction. So you weren't a party to the proceedings at the hearing the pension board conducted? We did not make a decision when we were not. Well, you haven't yet had your request granted to be a party, is that right? We had a request to be a party, but it was an oral request of the mayor. It was not granted, and I think that the failure of the pension board to exercise its discretion to deny or allow that is itself an abuse of discretion, but in my return time, I can talk about some of the cases where they said we'd be subject to administrative review anyway. Justice Bridges, Mr. McCoy is out of time. Do you have any additional questions? I do not, thank you. Thank you, Mr. McCoy. You'll have time in a rebuttal argument. Ms. Bostell. Thank you, Your Honors. If it won't please the court and the opposing counsel. It started with what was left off first. The city did not move to intervene. The hearings had already been conducted. The evidence had already been closed. The decision and order were being issued, and the attorney for the pension board was actually taking a vote on whether or not that decision and order should be entered when the city moved to intervene. Say that last part again. Yes, so the city moved to intervene when the pension board's attorney was actually asking the pension board to approve the decision and order. So not until February. So all of the evidence was already closed and hadn't closed since November. The city knew about the hearing. The city's mayor actually sat in on several of those hearings and did not do anything. They didn't file anything. They didn't move to intervene. They had all that time. So when you're talking about whether or not they forfeited an issue, once it's up to the trial court, I think it's a different issue. But we've always argued, we've always argued that they lacked standing to appeal this case because they did not move to intervene until not the 11th hour, but the 12th hour. And then they want to say, well, the pension board didn't move on it. Well, because the pension board was already issuing its decision and order. The evidence had been closed. What else could you do? You can't make argument at that point. You can't make, you can't offer evidence at that point. That's an interesting point, and this isn't a rhetorical question. Is it your position that the city needed to request and become part of the proceedings before the pension board in order to subsequently challenge the ruling of the pension board? That is exactly my position, Your Honor. And I said, Mr. McCoy made some arguments about whether or not I was arguing correctly standing versus jurisdiction, but my argument was essentially they, as a party with interest, lacked standing because they didn't move to intervene. They are the ones who have standing or don't have standing. And then once they were not, once they didn't move to intervene, once they didn't move to be part of the case, then the trial court lacked jurisdiction. And so this court lacked jurisdiction on their appeal because they didn't move to intervene at the proper time. And that has been my position throughout. In fact, actually, I filed a cross appeal, Your Honor, which we had agreed would have to be dismissed and consolidated into this appeal for procedural reasons. Yes, Your Honor. Let me ask you this. What notice requirements are there under the statute for all the parties of interest? At which level, Your Honor? At the board hearing. At the board hearing, there actually has to be a publication. The city's made aware because it's being scheduled, essentially, with the city. It goes on the city's website. There is going to be public notice. So you can't just hold a hearing in secret. You have to file public notice. Public notice provision, but one of the parties of interest is obviously the city when you have an occupational disease. Are they specifically given notice that the board is going to conduct this hearing, a pension board hearing? Honestly, Your Honor, I don't do too much pension board stuff, so I don't want to speak out of turn. I mean, I do the appeals, but not necessarily the lower section. But I believe that they are, in fact, given notice. And, in fact, whether or not they had constructive notice, they had actual notice because they showed up at the hearings. The mayor was there in person trying to make argument for the city without counsel. So it's your position, if I understand you correctly, that they must petition to become part of the proceedings before the board, and if they don't, then they have no standing to challenge anything that the board comes up with, any ruling, or standing to seek a judicial review of that decision? I think, Your Honor, that they would have judicial standing to seek a review of any denial of the motion to intervene, if that makes sense. Yes, but the absence of a motion, a written motion, without counsel suggests that the mayor was there and talked about it. But we're talking about, if I understand you correctly, their obligation to file a written motion to intervene before the board at some point while the board has this matter before it. Correct, and there's a plethora of case law about whether or not the city has a standing right to intervene or whether it's permissive. And it's permissive based on different things that they have to do under the pension code, including put aside those funds. So they do have a potential interest, which gives them permissive or discretionary right to intervene. So had they asked for it, do you think it's likely under the law they would have been entitled to intervene? I won't lie to you, I would have challenged it either way, but I think that it would have been routine for the pension board to, yes, grant their intervention. The pension board does this all the time. And if the pension board denies them, usually what we hear on appeal is, hey, you denied me and you didn't have that right to. And so then it becomes a different... So your position is, for this court, this is an easy case we should affirm because the trial court shouldn't have done anything, or maybe dismissed this appeal because the trial court didn't have jurisdiction to proceed because they weren't the party before the pension board. That is what I argued to the trial court. The trial court dismissed that, or denied my motion to dismiss on that basis, which I had filed at the outset. And so it was, you know, the case kept going, and so I couldn't appeal it until we get to this decision. Assuming we get to the merits, let me ask you about 412, because this is, I view it as a somewhat disturbing decision, the notion that 412 essentially reads, disability pension shall not be paid until disability has been established by examinations by three physicians selected by the board. English is my mother tongue. That suggests to me a personal physical examination by a doctor, and when the board says that requirement was met because examinations were conducted by review of the applicant's medical records, I don't see how that's possible, counsel. Well, I believe that it's subject to statutory interpretation. I mean, there's nothing in there saying you have to have an in-person hearing, or an in-person examination. It says examination of the firefighter. I'm not denying that that's what the language says. And so then it comes down to what examination means. And Mr. McCoy quoted examination in, you know, the English language Oxford Dictionary. Well, let me put it this way. Two sentences beyond the one I just mentioned reads as following. Medical examination of a firefighter receiving a disability pension shall be made at least once each year prior to attainment of age 50. That's in the same statute two sentences later. Are you suggesting to me that that medical examination as required by the statute can be, again, a review of medical records? I believe so, Your Honor, actually. And here's why. You asked about case law. There's no case law saying specifically that this is what is required or not required. In fact, I think that's why we're here arguing is that, you know, it doesn't specify that clearly. But there is a case law that cited the Linda Mulgrew case, Village of Buffalo Road v. Board of Trustees, 2020, Illinois Appellate 2nd, 190171, in which case the applicant got a form of cancer and he was going through the process, found out he essentially had two weeks to live, and it looks like they did all IME, all records revealed. And that's the logical extension of Mr. McCoy's argument. Actually, that's the logical opposite of Mr. McCoy's argument. What happens when someone is, let's say, hospitalized and going through the process? The doctor shows up in his hospital room. What's the problem? I mean, I really don't understand. I will say, Your Honor, several doctors might show up. His treating physicians might show up, but there would be independent medical doctors. I don't want to be arguing the policy with you because the legislature has already addressed it. The legislature is the policymaker and says, The disability penalty should not be paid until disabilities have been established by examinations by three physicians selected by the board. Now, the argument is, well, they couldn't make that clear if they meant impersonal physical examinations. I'm a former legislative congressman. Tell me, what language would you add that would make that clear? I'm going to try carefully because I don't want to get in trouble. But I think the idea is if you wanted something that says, you know, physical examination, it's pretty easily put in there. I mean, I would put impersonal physical examination. One of the, I think, factors that were kind of disregarding and that the pension board was considering was the fact that this wasn't happening at just any time. This was happening during the national pandemic, in which case many of the, I don't know about down here, but in Peoria, you know, regular hospitals were shut down except for, you know, and no one was seeing anyone in person if you could have it. Unless it was a life-threatening emergency. How long has this statute been in place in the form that it's in, where it uses that phrasing? I think since, let me look. I want to say it's been in place since 2008, but let me check and make sure. Okay. Substantial period of time. Substantial period of time. And we would be the first court to say that it does not mean that an in-person examination is required. Is that right? That would be what we were asking, yes. It seems like this has not been an issue that any city has raised because for a lot of things, actually, it benefits them not to have the person try to come in and win over the IMEs. Well, the statute in fact has been amended multiple times over the last several years, but this particular language hasn't been changed. And one of the things, again, as a legislative draftsman and someone who's worked with the legislature, I know the senators and representatives are people who are just plain folks for the most part, not lawyers. And if you said to them, well, what's required in this bill of prevention should not be paid until this bill has been established by examinations by three physicians, I don't think anyone would ever think that that meant by a written review of their medical records. That would certainly suggest to me a personal examination by the physicians. Well, I think you're already – I'm not in the mind of the assembly. I don't know, you know, what they think or how they come to these conclusions. Isn't that suggested to you? I mean, if you just, you know, it's going to be established by examinations by three physicians. Doesn't that mean, you know, not examinations of medical records. Well, if I was a layperson, I would have thought that meant an in-person examination. Well. But. But what? Since I do personal injury and work cop, examinations mean examinations. And sometimes they're IME and not in-person. You actually have to specify. Well, counsel, we're not supposed to consider matters outside the record. And I'm loathe to ask questions that – or specifically ask the lawyer to provide information outside the record. But I also don't think it's worthwhile, sir, that we stuck our heads in the sand. So as a matter of practice, are cases litigated in exactly the same way, pension board cases where instead of in-person examinations, claimants are seen, and I put the word seen in quotes, by lay physicians who are examining the claimant's records only. Yes, and in fact, actually. Is that common practice? That is common practice. And I will say it's also something we argue on the other side when it doesn't favor us. You know, when they do – I mean, it's true. When they do IME record reviews and they don't examine the person, we say, oh, but you didn't examine that. You should have done an in-person examination. That would have given you all the information that's required under the statute. So that is one of the things that, yes, it is commonly litigated. And in fact, if you look back at the transcript, there's some back and forth between my boss, Stephen Kelly, and the pension board about he raised the issue of whether or not they should have done in-person reviews. And after talking to Chuck, he was like, you know what, we're just going to waive the issue because they didn't think that they would win on that, you know, at that point. So, you know, these are things that were considered, but it was not so far out of the realm of reason or custom that it was an automatic, oh, that's not right. That's against the law. So, counsel, let me ask you this. Yes, sir. We're currently looking on a slippery slope here when we start saying that basically, section 4.1.12 is not requiring an inpatient physical examination. And the reason I ask that is, what records are given typically? You know, how do we know if it's a complete set of medical records that were provided? So doesn't that create a problem? I will say it is a slippery slope. I don't want to get caught up in it, but the truth is, I mean, this is just the nature of this business. But it's more designed to protect the firefighter, not the city, not the pension board. So when you're talking about the medical records and what they're given, the pension board actually sends a copy to the petitioner's attorney or plaintiff's attorney saying, you know, here's what we sent, and it gives a detailed outline of everything that was sent. And if the claimant wants to add information because they don't think it was sufficient, they send a letter to the pension board and say, hey, you forgot this, and this is relevant. So it's not that there's no oversight or no way to undo what was done. This is a long process. It's not like, well, in Village of Buffalo Road, it's a very quick process because of this cancer. And I think it's designed to be that way in cases of, you know, immediate need. But it can also take years to get these cases. Another thing, you brought up just obviously COVID-19 pandemic that we've all addressed. And we know being on the court of review, we've had issues raised regarding rule changes and procedural changes as a result of that. Did the board actually make comments that they were going with an inpatient or, I mean, a non, you know, patient review because of COVID? No, your honor. In fact, I think the pension board. Yeah. I think the pension board's argument was more, what is an in-person examination going to do? He's got, you know, renal cancer. I mean, it's going to be shown in the records. It's not going to be anything that a physical exam is going to show anyway. So I think they kind of curtailed it. I'm saying that that's the reason the IMEs wouldn't do it, the in-person. But I'm not saying that that was the board's intention. Well, again, I'm not sure of the wisdom of it, but that's not our call. The legislature says, got to have a physical examination by, or examination by three physicians. The board maybe not, doesn't like it to the litigants, but that's the requirement. By the way, I want to ask you one other thing in the reply brief. Yes. The city says, regarding your argument, says it claims that you're unsure if you're arguing between jurisdiction or standing. And so I'll give you a chance. Why are you arguing to us? And I asked you about that earlier, I thought, and your position is the city had no jurisdiction before the trial court and this court because they never petitioned the board. Correct. I would say when I say no standing, no jurisdiction, I'm not conflating the two issues. Standing is something that a party has or does not have. And then based on whether or not the party has standing or does or does not have jurisdiction. So I would like to bring up something. One last thing. I'm sorry. The city of Ivy's says, well, wait a minute, that's wrong in any event, because the mayor requested to intervene. The pension board ignored that request. Well, again, all the evidence was closed. All the arguments were closed. Standing is not just about you moved to intervene. Because technically, I mean, the precedent that says is that anybody can come in when the jury is out to hurt and say, oh, I want to offer evidence. That's not how it works. You have to move in at the appropriate time and you have to move to be a party at the appropriate time. Well, let me also, this term from the reply brief, here the city, through its mayor, requested to intervene, and the pension board ignored that request. Requested how? Now, I'm wondering about this. It seemed almost, hearing maybe counsel, Mr. McCoy can clarify it, that the mayor was present at the hearing and musing about maybe we'd like to intervene in this case. More specifically, was there any specific written motion to that effect by the city to the board saying, we want to intervene? No, Your Honor, there was no written request. And, in fact, the first time I believe he showed up at hearing and he tried to just offer evidence unilaterally without having any oral motion and then didn't have to make the oral motion in ten minutes. Let me guess, the mayor is there personally and without counsel. Mayor is there personally and without counsel. Real fast, Your Honors, what I'd like to address before we go is this letter that was kind of ignored by the city about their separation and they separated from Mr. Melton voluntarily on July 2nd, 2020, saying he was disabled as a result of a stroke. They've argued here today that his need for anti-coagulants meant that he was disabled long before the stroke occurred, except for then, by then, by the time of March 2020, he's had the stroke, they have his medical records, you know, they're going through, he's got this already prescribed, well, not prescribed actually, already has it mentioned that he has, you know, this, been recommended to take anti-coagulants and then after the stroke, he needs them. And they have all that and they still don't say that he's disabled at that point. They don't say he's disabled as a result of the anti-coagulants. Before you finish up there, I want to ask you, what is the quantum proof necessary for a claimant to establish causation, to establish any element of the claim? Well, so I would say it is proponents of the evidence, but I differ from Mr. McCoy in what, when that standard is met and how that standard is met. Well, specifically in this case, what evidence was there establishing causation of your client's stroke? Well, you know, I believe that, and I wrote in my brief, that basically I think that we have the presumption that the stroke was caused by his firefighting duties under the law. And then it is rebuttable. It's not a mandate, it's not a directed verdict, it goes to the evidence. So then they have to overcome it. If they overcome it, then Mr. Mountain gets the burden back and has to basically prove his case from there. So I think it just shifts the burden of proof. Do you want me to finish answering, Your Honor? Sorry? So do you want me to finish answering? Please. Okay. I didn't want to get in trouble. The truth of the matter is, when you're talking about this proponents of the evidence standard, if a stroke was just, if there was no rebuttable presumption under this Occupational Disease Act, then I would posit to Your Honors, how would it differ from accumulative trauma under the line of duty disability pension? It wouldn't. If he had the burden of proving up, this leads to this, leads to this, leads to this, then that would be accumulative trauma under the line of duty disability pension. You wouldn't need a separate occupational disease pension. So the Occupational Disease Pension Act basically creates this rebuttable presumption, and when it talks about the cancer that must be rebuttably presumed, I'll leave that to the person who directed it, but I read that as a reinstatement, a restatement of the rebuttable presumption. Not a new presumption listed, but because there are extra requirements under cancer, I think the legislature was reminding you that rebuttable presumption for cancer still applies, and it automatically applied to heart disease, stroke, tuberculosis, or disease of the lungs. Because that's what that first paragraph's about. Okay. You are out of time. Justice Bridges, do you have any additional questions of Mrs. Bonesteel? I do not. Thank you. All right. Thank you. I thank you very much for your time today. Mr. McCoy, rebuttal argument? And if you would, please take up Mrs. Bonesteel's last point regarding the rebuttable, a rebuttable presumption. Yeah, it does not exist in this case. There is no rebuttable presumption in this case. Why is that? I'm finding here in the statute. There is a rebuttable presumption in certain cancers under the statute. There is created a statutory rebuttable presumption for those cancers, and I'm referring here under 4-110.1 that they actually use the words rebuttably presumed for certain cancers, but they did not have the same language for the other occupational diseases such as stroke or tuberculosis, respiratory diseases. So I think the fact that these certain cancers, not all cancers, but certain cancers are rebuttably presumed that meet the qualifications implies that the other occupational diseases, there is no presumption, and you have to show that this is caused from service, resulting from service as a firefighter. So we have an example by the legislature how to create a rebuttable presumption in the same statute, but they do not do so for occupational diseases. And this, stroke is one of the, not everything is an occupational disease. There's enumerated occupational diseases, and stroke is one of them. I think, you know... Let me go back to the jurisdiction question, Mr. McCoy, and the question I raised earlier. Legal proceedings are pretty formal, including certainly the board when it's deciding disability pensions, and your brief, you say, the city through its mayor requested to intervene. That, according to Ms. Bonesdale, and as far as you can tell from the record in your brief, amounted to musings by the mayor while the proceedings are going on. Gee, you know, I'd like to get involved in this case. There's no letter there. There's no motion filed. There's no formal request. There's nothing in writing. How does this musings by the mayor, assuming they occurred, amount to a request to intervene which is cognizable as a judicial matter? Yeah, thank you. I would disagree that there's musings by the mayor. I couldn't hear what you said. I would disagree with the characterization that there's musings by the mayor. What I would characterize is the request to intervene, and then it took place after the hearing evidence, and it happened after the hearing evidence. Was there ever a written motion to intervene? There was not a written motion, but there was a direct request to intervene as a result. On what basis in the Dakota Civil Procedure, any case law, does an oral motion to intervene ever get cognizable as constituting something legal that if denied could then, let's say, be impeached? There are plenty of cases discussing the discretion of pension boards to allow interventions, but I saw none of them saying that there had to be a written petition to intervene or formal motion. Was there ever any case talking about an oral motion to intervene without anything in writing? You know, I'm not prepared. I'm not prepared to answer that question. If we agree with the chief's right that you needed something formally to intervene and you didn't have it, then you have no business pursuing an appeal to the circuit court, do you? I believe we do now. I have several responses to that. First, the request, which was a direct request, which was granted or denied, was made after the decision that the facility was meant was the need for anti-requirements, which is by law not an occupational disease. It's not an enumerated occupational disease. And at that point, the mayor requested. There was some discussion whether the pension board could receive new evidence. And without voting on that request, the pension board voted on a decision that was very different from the decision that they voted on. But there was an oral request. Then the pension board itself did not raise the standing or jurisdiction. They're different questions. Standing can be waived. Issues of standing can be waived. Before the trial court? Before the trial court. I chose some arguments, but not in its response or answer. And it's not done so in its brief on appeal. I think it's waived the standing issue. And I kind of question whether Mr. Melton can bring the standing issue where the pension board... Is standing and jurisdiction something that the trial court, this court, must always consider whether raised or not? Jurisdiction is something that must always be considered. Standing can be waived. And that's why we had this confusing argument by Mr. Melton whether the standing or jurisdiction... If you haven't been granted relief to intervene, on what basis are you then... You're not a party to these proceedings. On what basis are you then claiming to be a party at the trial level? There's intent to participate. There is no objection by the... Okay, but that is my question. What if we reject the notion that the mayor's oral musings amount to a request to intervene that's cognizable? Then I have two backup arguments that are the cases of the village of Stickney and the cost versus bell bill, both of which suggest that there can be an administrative review by municipality in the absence of their intervention at the proceeding level, the administrative proceedings. The village of Stickney, one said it was not seriously questioned whether there could be such an administrative review. The cost versus bell bill, the public court said that the city is bound by the administrative decision, even though it was not a party because it could have sought an administrative review of that decision. So the cost said that there can be an administrative review by municipality even in the absence of the party's status. Here, I think it's really an issue of standing. I think standing can be weighed. I don't think we have a... The only case I'll be challenging is this case by the... Healan case. Okay, Mr. McQuarrie, I'm sorry to have let you go beyond your time. You are out of time. Justice Pruduce, do you have any concluding questions? I do not, thank you. Thank you very much. Thank you. Appreciate it. Thank you both. The case is going to be taken under advisement and we'll issue a written decision. The court stands at recess.